**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Audra Lemme, an individual | **No.  CV-05-03705-PHX-JAT (Lead)** |
| Plaintiff, | CV 06-0204-PHX-JAT (Consolidated) |
| vs. | **ORDER** |
| The County of Yuma, Arizona; State of Arizona; Richard Stallworth, an individual; and DOES 1 through 100, inclusive | |
| Defendants. | |

Pending before the Court is Plaintiff's Motion for Leave to Amend Complaint and File First Amended Complaint (Doc. # 75).  Defendant County of Yuma filed its Opposition to Plaintiff's Motion for Leave to Amend Complaint (Doc. # 83).  Defendant State of Arizona filed a separate Opposition to Plaintiff's Motion for Leave to Amend Complaint (Doc. #84) adopting the reasons set forth in the County of Yuma's opposition.  Thereafter, Plaintiff filed Objections to Defendant Yuma County's Evidence Re Plaintiff's Motion for Leave to File First Amended Complaint (Doc. # 88), in which Plaintiff objects to the exhibits attached to the County of Yuma's opposition.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On November 16, 2005, Plaintiff filed her original Complaint (Doc. # 1) against the County of Yuma, the State of Arizona, and Richard Stallworth,[1] seeking redress for alleged violations of 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), the Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-1461, *et seq.*, the Arizona Employment Protection Act ("AEPA"), A.R.S. § 23-1501, *et seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and for the intentional and negligent infliction of emotional distress.

The relevant factual underpinnings of Plaintiff's original Complaint begin on or about January 18, 2005, immediately after Richard Stallworth ("Stallworth") was appointed the Justice of the Peace of Precinct One for the Yuma County Justice Court.  At the time of Stallworth's appointment, Plaintiff was serving as the Justice Court Administrator.[2]  Plaintiff alleges, in Paragraph 14 of her original Complaint, that immediately after his appointment, Stallworth began using his position "to harass and discriminate against the Plaintiff, because she was a woman, by engaging in conduct which created a 'hostile and offensive work environment' and which constituted sexual discrimination and harassment."  Thereafter, Plaintiff sets forth numerous examples of Stallworth's conduct she alleges to constitute sexual harassment and gender discrimination.  In addition, Plaintiff alleges Stallworth began threatening and stalking her "in order to emphasize his control over her, seeking to coerce and intimidate [Plaintiff] into tolerating and acquiescing to his sexual harassment of her."

As a result of Stallworth's alleged conduct, Plaintiff claims she became emotionally distraught and was hospitalized upon her doctor's orders.  After her hospitalization, but before returning to work, Plaintiff alleges she reported "the harassment and abusive conduct

---

[1]Upon stipulation of the parties, Defendant Richard Stallworth, now deceased, was dismissed without prejudice (Doc. #64).

[2]Plaintiff alleges that she was hired by Yuma County on or about May 27, 1997, and was terminated on or about March 4, 2005, at which point she had been serving as the Justice Court administrator for seventeen (17) months.

to the Defendant COUNTY, her employer, whom advised [Plaintiff] nothing could be done regarding her complaints of sexual harassment and discrimination against Defendant STALLWORTH because he was a judicial officer." Plaintiff informed the County of Yuma that she was unable to work in such an "intolerable and hostile" environment. Thereafter, Plaintiff was told that the presiding Justice of the Peace had been notified of Stallworth's behavior and that Plaintiff would be relocated to another Justice Court, located twenty (20) miles away, when she returned from her medical leave.

Upon returning to work, Plaintiff alleges that, in retaliation for reporting Stallworth's "sexual harassment, discrimination and tortious conduct," she was informed that Stallworth was cutting her salary by 54%, effective immediately. Plaintiff further alleges in Paragraphs 22 and 23 of her original Complaint:

> Thereafter, on March 4, 2005, and in further retaliation for engaging in the protected activity of reporting the unlawful conduct to her employer, the Defendant COUNTY after meeting with STALLWORTH and [the presiding Justice of the Peace], decided that [Plaintiff] would be terminated if she refused to resign. The Plaintiff refused to resign, as she had done nothing to warrant the retaliatory action and on March 4, 2005, in violation of *Title VII*, the *Arizona Civil Rights Act (ACRA)* and the *Arizona Employment Protection Act (AEPA)*, [Plaintiff] was wrongfully terminated from her position with the COUNTY.

> Defendants' conduct in harassing, discriminating and wrongfully discharging the Plaintiff as described hereinabove, because of her gender and in retaliation for her complaints to her employer about STALLWORTH's inappropriate conduct and for the proper exercise of her *Family Medical Leave Act (FMLA)* rights, violated the *ACRA* and the *FMLA*. This conduct by Defendants constitutes unlawful employment discrimination in violation of Title VII, *42 USC §1983, 42 USC §2000e-2 et seq* and *42 USC §2000e-3, et seq*. and *A.R.S. §41-1461 et seq*.

Prior to the filing of the original Complaint, counsel for Plaintiff sent to the County of Yuma a Notice of Claim, dated June 2, 2005, containing allegations identical to those in the Complaint. An Amended Notice of Claim, dated July 22, 2005, was sent to the County of Yuma and the State of Arizona. This amended notice contained the same allegations as those in the June 2, 2005, Notice of Claim.

On August 31, 2006, Plaintiff filed her Motion for Leave to Amend Complaint and File First Amended Complaint (Doc. # 75). In the proposed amended Complaint, Plaintiff seeks to add the allegation that Plaintiff was employed by both the County of Yuma and the State of Arizona. Plaintiff also seeks to add the following paragraph:

> In or about November 2004, Plaintiff AUDRA, in her position as Justice Court Administrator for Justice Court, Precinct One (hereinafter referred to as "JP1"), disciplined Justice Court clerk, Carlota Perez (hereinafter referred to as "Perez"), after discovering Perez had been performing improper and unethical paralegal services during her employment, which created a serious conflict of interest and risk of liability for the Justice Court, in violation of Arizona law and statute. Thereafter, Plaintiff AUDRA, in carrying out her duties and responsibilities as Justice Court Administrator, reported the wrongful and unethical conduct of Perez to her employer.

As a result of the allegations contained in the new paragraph, Plaintiff seeks to amend the allegations in Paragraph 14 of the original Complaint by alleging that Stallworth, who was close friends with Perez, used his position "to harass, discriminate and retaliate against the Plaintiff, in part to penalize [Plaintiff] for reporting the unethical conduct of STALLWORTH'S friend, Perez, to Plaintiff's employer, by engaging in conduct directed at [Plaintiff] which created a 'hostile and offensive work environment' and which constituted sexual discrimination and harassment." Also, Plaintiff seeks to amend Paragraphs 23, 36 and 46 of her original Complaint as follows:[3]

> Defendants' conduct in harassing, discriminating and wrongfully discharging the Plaintiff as described hereinabove, violated *Title VII, the FMLA* and the *ACRA*. This conduct by Defendants constitutes unlawful employment discrimination in violation of *Family Medical Leave Act (FMLA)* rights, violated the *ACRA* and the *FMLA*. This conduct by Defendants constitutes unlawful employment discrimination in violation of Title VII, *42 USC §1983, 42 USC §2000e-2 et seq* and *42 USC §2000e-3, et seq.* and *A.R.S. §41-1461 et seq.*

---

[3]The Court, by referencing only a few paragraphs in the Complaint and the proposed amended Complaint, does not intend to imply that the referenced paragraphs are the only ones that the proposed amended Complaint implicates. However, the referenced paragraphs are the most relevant to the Court's analysis of Plaintiff's motion to amend.

\*     \*     \*

On March 4, 2005, Defendant COUNTY and/or Defendant STATE, without cause, wrongfully terminated the Plaintiff's employment. This wrongful discharge by Defendant COUNTY and/or defendant STATE was in retaliation for the Plaintiff's engaging in protected activity under *Title VII*, the *FMLA*, the *AEPA* and the *ACRA*.

\*     \*     \*

As described above, [Plaintiff] engaged in conduct protected by *Title VII* and the *ACRA*, by among others, reporting the unethical conduct of Perez to [Plaintiff's] employer, and by reporting the wrongful and discriminating conduct of [Plaintiff's] supervisor, STALLWORTH, to her employer, the COUNTY and/or the STATE.

## II.    LEGAL STANDARDS

A motion to amend a complaint is governed by Rule 15(a) of the Federal Rule of Civil Procedure, which provides:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a).  While the decision to grant or deny a motion to amend is within the discretion of the district court, "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *United States v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) ("A district court's discretion to deny leave to amend . . . is not absolute.") (citing *Foman*); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987). "In exercising its discretion[,] . . . 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities. . . . Thus, 'Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.'" *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987)

(citations omitted); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (stating that leave to amend is generally allowed with "extraordinary liberality"). "This liberality . . . is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, LTD. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

The extremely liberal policy in favor of amendments, however, is subject to some limitations. The United States Supreme Court has established that motions to amend should be granted unless the district court determines that there has been a showing of: (1) undue delay; (2) bad faith or dilatory motives on the part of the movant; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; or (5) futility of the proposed amendment. *Foman*, 371 U.S. at 182; *see SmithKline Beecham*, 245 F.3d at 1052; *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991); *W. Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991); *Cal. Architectural Bldg. Prods.*, 818 F.2d. at 1472; *Poling v. Morgan*, 829 F.2d 882, 886 (9th Cir. 1987). "Generally, this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (citing *DCD Programs*, 833 F.2d at 186). Significantly, "[t]he party opposing amendment bears the burden of showing prejudice," futility, or one of the other permissible reasons for denying a motion to amend. *DCD Programs*, 833 F.2d at 187; *see Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988) (stating that leave to amend should be freely given unless opposing party makes "an affirmative showing of either prejudice or bad faith").

Regarding the futility of amendments to add claims, "[a] district court does not err in denying leave to amend where the amendment would be futile . . . or would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (citations omitted); *see Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally insufficient.") (citation omitted). A motion for leave to amend is futile if it can be defeated on a motion for summary judgment. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986). "However, a proposed amendment is futile only if no set of facts can be proved under the

1  amendment to the pleadings that would constitute a valid and sufficient claim or defense."

2  *Miller*, 845 F.2d at 214; *see Foman*, 371 U.S. at 182 (stating that "[i]f the underlying facts

3  or circumstances relied upon by a [movant] may be a proper subject of relief, he ought to be

4  afforded an opportunity to test his claim on the merits"); *DCD Programs*, 833 F.2d at 186

5  (stating that "a motion to make an '[a]mendment is to be liberally granted where from the

6  underlying facts or circumstances, the plaintiff may be able to state a claim'") (quoting

7  *McCartin v. Norton*, 674 F.2d 1317, 1321 (9th Cir. 1982)).

## III.   DISCUSSION

9  Plaintiff seeks to amend her original Complaint to include the allegation that Plaintiff

10 was employed by both the County of Yuma and the State of Arizona.   Defendants'

11 oppositions do not address Plaintiff's motion to amend insofar as it seeks to include such an

12 allegation.  Accordingly, the Court will grant Plaintiff leave to amend her original Complaint

13 to the extent she seeks to add the allegation that she was employed by both the County of

14 Yuma and the State of Arizona.  *See* Rule 7.2(i) of the Local Rules of Civil Procedure.

15 Plaintiff also seeks to amend her original Complaint to include allegations concerning

16 her reporting of an employee after she discovered the employee had been performing

17 paralegal services in violation of Arizona law and statute.  The latter allegations, according

18 to Plaintiff, are "necessary to enable Plaintiff to establish her discrimination and retaliation

19 claims against Defendants."   Specifically, Plaintiff argues that the proposed amended

20 Complaint "merely adds additional factual allegations regarding the basis and motivation for

21 Stallworth's tortious conduct, and provides the necessary element for understanding the

22 motivation behind Stallworth's inexplicable and horrific behavior."  Plaintiff further argues

23 that the new factual allegations do "not effect or alter the gravamen of Plaintiff's Complaint"

24 or "alter the core issues in the original action."  Instead, Plaintiff argues that the new

25 allegations "merely serve to bolster the Plaintiff's original causes of action for harassment,

26 discrimination, retaliation, and provide the necessary facts demonstrating the basis and

27 motivation for the perpetrator's conduct."  In other words, Plaintiff argues that because of

28 Stallworth's animosity toward Plaintiff (because of her reporting of another employee for

wrongful conduct), he sexually harassed her and discriminated against her based on her gender, and eventually retaliated against her after she reported his harassing and discriminating behavior.

In opposition, Defendants argue that Plaintiff is attempting to assert a new cause of action based on the new allegations in the proposed amended Complaint. Specifically, Defendants argue Plaintiff is asserting a "whistle-blower" cause of action, under § 23-1501(3)(c)(ii) of the Arizona Employment Protection Act ("AEPA"), because she now seeks to allege she was terminated for reporting the employee's improper conduct, in addition to being terminated for reporting Stallworth's alleged sexual harassment and gender discrimination. Accordingly, Defendants argue that the proposed amendment would be futile because Plaintiff failed to include the new allegations and cause of action in the two notices of claim, as required by A.R.S. § 12-821.01 and A.R.S. § 11-622(A).[4] The Court agrees.

First, the Court finds that the new allegations in the proposed amended Complaint create an entirely new cause of action under § 23-1501(3)(c)(ii) of the AEPA. The AEPA provides, in pertinent part, that an employee has a claim against an employer for termination of employment if the termination was in retaliation for:

> The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state . . .

A.R.S. § 23-1501(3)(c)(ii). In her original Complaint, Plaintiff asserts that Stallworth's conduct constituted sexual harassment and gender discrimination. Plaintiff further alleges that Stallworth and her employer terminated her after she reported Stallworth's harassing and discriminatory conduct. Arguably, such allegations in Plaintiff's original Complaint advance a cause of action under § 23-1501(3)(c)(ii) of the AEPA because Plaintiff alleges that she was terminated for reporting Stallworth's harassing and discriminatory conduct, which

---

[4]While Defendants assert other reasons in support of their opposition to the motion to amend, the Court will not address them as it concludes that Plaintiff's failure to include the new allegations and cause of action in the two notices of claim to be dispositive of the issue.

harassing and discriminatory conduct violated a statute of the state, specifically, the Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-1401 *et seq*.[5]

In contrast, Plaintiff's proposed amended Complaint contains allegations that Plaintiff's reporting of another employee who performed paralegal services in violation of Arizona law caused Stallworth to sexual harass Plaintiff and discriminate against her based on her gender. The proposed amended Complaint also contains allegations that Plaintiff was terminated because she reported the employee. The Court finds that these new allegations form the basis of a new cause of action under § 23-1501(3)(c)(ii) of the AEPA, which cause of action was not enumerated in Plaintiff's original Complaint.

As for Plaintiff's argument that the new allegations *only* bolster her original sexual harassment, gender discrimination, and retaliation claims, it fails because Title VII, the FMLA, and the ACRA prohibit retaliation against an employee for opposing or complaining about an employment practice prohibited by the particular statute.[6] In contrast to the AEPA, the provisions of Title VII, the FMLA and the ACRA do not provide protection to an employee who reported another employee for performing paralegal services in violation of Arizona law and statute. Indeed, if Plaintiff does not intend to assert a new cause of action for retaliation under the "whistle-blower" provisions of § 23-1501(3)(c)(ii) of the AEPA, but instead only to bolster her existing claims, then there would be no need to file an amending

---

[5]The Court tempers this statement because § 23-1501(3)(b)(i) of the AEPA provides that if an employee is terminated in violation of the ACRA, the remedies provided under the ACRA are the exclusive remedies. The ACRA does contain an anti-retaliation provision prohibiting discrimination against an employee who opposes any practice made illegal by the ACRA. *See* A.R.S. § 41-1464(A). Thus, whether or not the allegations in Plaintiff's original complaint advance a claim under the AEPA or whether the exclusive remedy lies under the ACRA becomes an issue. However, the issue does not need to be addressed because it is not relevant to the Court's Order.

[6]*See* 42 U.S.C. § 2000e-3 (prohibiting discrimination against an employee who complains of discriminatory practices prohibited by Title VII); 29 U.S.C. § 2615(2) (prohibiting discharge or discrimination against an employee who opposes any practice made illegal by the FMLA); A.R.S. § 41-1464(A) (prohibiting discrimination against an employee who opposes any practice made illegal by the ACRA).

complaint under the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.[7]

Second, the Court finds that the new allegations and cause of action in Plaintiff's proposed amended Complaint were not set forth in Plaintiff's two notices of claim, as required by A.R.S. § 12-821.01(A).[8]  Prior to filing suit against a county or the state, a plaintiff must satisfy A.R.S. § 12-821.01(A), which provides:

> Persons who have claims against a public entity or public employee shall file claims with the person or persons authorized to accept service for the public entity or public employee . . . within one hundred eighty days after the cause of action accrues. The claim shall contain facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed.  The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount.  Any claim which is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

The notice of claim statute serves several purposes: (1) to provide a public entity with an opportunity to settle a claim before the filing of a lawsuit; (2) to allow a public entity to investigate a claim while evidence and witnesses are available; (3) to assist in budget preparations; and (4) to encourage repair of dangerous conditions or practices.  *Stulce v. Salt River Project Agric. Improvement and Power Dist.*, 3 P.3d 1007, 1013 (Ariz. Ct. App. 1999). Given these purposes, the notice of claim "must at least contain enough information to allow

---

[7]The Court's finding that the new allegations create a cause of action not previously asserted is not intended to constitute a ruling on the admissibility of the new allegations in any subsequent proceeding addressing the causes of action in Plaintiff's original Complaint.

[8]The County of Yuma argues that A.R.S. § 11-622(A) also imposes upon Plaintiff the requirement to present her claims to the county board of supervisors prior to filing suit.  The Court is not convinced that A.R.S. § 11-622(A) applies to the claims at issue herein.  *See Norcor of America v. Southern Arizona Int'l Livestock Ass'n*, 596 P.2d 377, 378-79 (Ariz. Ct. App. 1979) (discussing the claims that must be presented to a county under A.R.S. § 11-622(A)).  However, because A.R.S. § 12-821.01(A) clearly applies to the claims against the County of Yuma, and because the two statutes share similar purposes, *see Martineau v. Maricopa County*, 86 P.3d 912, 915 (Ariz. Ct. App. 2004), the Court finds it necessary to only address A.R.S. § 12-821.01(A).

1   the state to intelligently ascertain these purposes so it can conscientiously allow or disallow

2   the claim." *Howland v. State*, 818 P.2d 1169, 1175 (Ariz. Ct. App. 1991) (citations omitted).

3   Moreover, the notice of claim must contain "an assertion of liability on behalf of the State

4   in regard to a specifically described event sufficient to allow the State to investigate and

5   determine its potential liability." *Id*. (citation omitted).

6        The Court has reviewed the June 2, 2005, Notice of Claim that Plaintiff sent to the

7   County of Yuma, and the July 22, 2005, Amended Notice of Claim that Plaintiff sent to the

8   County of Yuma and the State of Arizona.  The notices of claim, like the original Complaint,

9   only contain allegations of sexual harassment, gender discrimination, and retaliation for

10  reporting the sexual harassment and gender discrimination.  The notices of claim do not

11  contain any reference to a retaliation claim based on Plaintiff's reporting of another employee

12  who had performed paralegal services in violation of Arizona law.[9]  Accordingly, under

13  Arizona law, the notices of claim are deficient with respect to such a retaliation claim.  And,

14  Plaintiff's proposed amended Complaint, to the extent it seeks to allege such a retaliation

15  claim, is futile because A.R.S. § 12-821.01(A) unequivocally provides that the claim "is

16  barred and no action may be maintained thereon."

17       Finally, Plaintiff filed objections to the four exhibits attached to the County of Yuma's

18  response to the motion for leave to amend.  Specifically, Plaintiff objects to the notice of

19  claim her counsel sent to the County of Yuma, the amended notice of claim her counsel sent

20  

---

21      [9]It is clear to the Court that Plaintiff knew or should have known of the retaliation

22  claim at the time the notices of claim were sent to Defendants.  A notice of claim must be
    filed within 180 days after the cause of action accrues. A.R.S. § 12-821.01(A). For purposes

23  of A.R.S. § 12-821.01, a cause of action accrues when a party realizes she has been damaged
    and knows or reasonably should know the cause.  A.R.S. § 12-821.01(B).  In email

24  correspondence dated December 29, 2004, before Stallworth was appointed Justice of the
    Peace, Plaintiff wrote that Stallworth's "first task is to get rid of" her and related it to

25  "Carlota," the employee Plaintiff reported for performing improper paralegal services and
    who was "very good friends" with Stallworth.  Thus, Plaintiff, at the time the notices of claim

26  were filed six months later, knew or should have known of her claim that she was retaliated

27  against for reporting another employee who had performed paralegal services in violation of

28  Arizona law.

to the County of Yuma and the State of Arizona, a deposition transcript, and Plaintiff's December 29, 2004 email. The grounds for objecting to all of the exhibits are that the documents are not properly authenticated, lack foundation and are improper hearsay evidence. Defendants respond that the notices of claim and the email correspondence can be authenticated by Plaintiff's counsel and/or Plaintiff. Defendants further respond that neither Plaintiff nor her counsel allege that the notices of claim and email have been altered or are otherwise inaccurate. Because Plaintiff and her counsel have the ability to authenticate those documents, but do not specifically challenge the authenticity thereof, the objections are overruled. As for the deposition transcript, the Court did not consider it in ruling on Plaintiff's motion for leave to amend.

The pending motion for summary judgment (Doc. # 67) and cross-motion for summary judgment (Doc. # 94) remain under consideration.

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the Motion for Leave to Amend Complaint and File First Amended Complaint (Doc. # 75) is GRANTED in part and DENIED in part consistent with the above order;

**IT IS FURTHER ORDERED** that the Clerk of Court shall NOT file the First Amended Complaint lodged at Doc. # 76. Plaintiff shall file an amended Complaint, consistent with the above order, within ten (10) days of this order; and

///

///

///

///

1     **IT IS FURTHER ORDERED** that Plaintiff's Objections to Defendant Yuma

2  County's Evidence Re Plaintiff's Motion for Leave to File First Amended Complaint exhibits

3  (Doc. # 88) is DENIED.

4     DATED this 19th day of October, 2006.

5

6

7

8  _____

                     James A. Teilborg
9                 United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28